T.C. Memo. 1995-469

UNITED STATES TAX COURT

C. MERRITT and DOROTHY PUMPHREY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13538-94.                    Filed October 3, 1995.

Jay Fred Cohen, for petitioners.

Alan R. Peregoy, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, Judge: This case was assigned to Special Trial
Judge Robert N. Armen, Jr., pursuant to the provisions of section
7443A(b)(4) of the Internal Revenue Code of 1986, as amended, and

Rules 180, 181, and 183.[1]  The Court agrees with and adopts the Opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

ARMEN, Special Trial Judge:  Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1990 in the amount of $15,887.  Respondent also determined that petitioners are liable for an excise tax under section 4980A for the taxable year 1990 in the amount of $5,514.[2]

The only issue for decision is whether the Transfer Refund distribution received by petitioner C. Merritt Pumphrey in 1990 from the Maryland State Employees' Retirement System qualifies for forward averaging under section 402(e)(1).  The resolution of this issue turns on whether the Transfer Refund distribution constitutes a "lump sum distribution" within the meaning of section 402(e)(4)(A).

Irrespective of how we decide the issue in dispute, petitioner C. Merritt Pumphrey concedes that he is liable for the excise tax under section 4980A.  In contrast, respondent concedes that petitioner Dorothy Pumphrey is not liable, by virtue of

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Sec. 4980A imposes a 15-percent excise tax on excess distributions from qualified retirement plans.  This tax is included within ch. 43 of the I.R.C.  It is therefore subject to the deficiency procedures set forth in subch. B of ch. 63 of the I.R.C.  See sec. 6211(a).

having filed a joint income tax return, for such tax. Respondent also concedes that if we decide the issue in dispute in petitioners' favor, then the Transfer Refund distribution qualifies for forward averaging under the more favorable 10-year method, rather than the less favorable 5-year method utilized by petitioners on their income tax return for 1990.

FINDINGS OF FACT

Some of the facts have been stipulated and they are so found. Petitioners resided in Ellicott City, Maryland, at the time their petition was filed with the Court.

Petitioner C. Merritt Pumphrey (petitioner) was the Clerk of the Circuit Court for Howard County, Maryland. He was originally appointed in 1966 to complete the term of the former clerk and was thereafter elected to the position. Petitioner held office until 1990, when he was defeated in the general election on November 7, 1990. Petitioner remained in office until November 30, 1990, at which time his successor took the oath and assumed the duties of the office.

As the clerk of a circuit court, petitioner was a member of the Employees' Retirement System of the State of Maryland (the Retirement System) until he elected to transfer to the Employees' Pension System of the State of Maryland (the Pension System). Petitioner elected to transfer from the Retirement System to the Pension System on November 8, 1990, the day after he lost the November 1990, general election. Petitioner's election to

transfer from the Retirement System to the Pension System was effective retroactively to the first of that month; i.e., to November 1, 1990.[3]

The Retirement System is a qualified defined benefit plan under section 401(a). The Retirement System requires mandatory nondeductible employee contributions. The Pension System is also a qualified defined benefit plan under section 401(a) but generally does not require mandatory nondeductible employee contributions. The State of Maryland contributes to both the Retirement System and the Pension System on behalf of the members of those systems. The trusts maintained as part of the Retirement System and the Pension System are both exempt from taxation under section 501(a).

In 1990, petitioner received a Transfer Refund distribution (the Transfer Refund) in the amount of $216,616.26 on account of his election to transfer from the Retirement System to the Pension System. The $216,616.26 Transfer Refund consisted of $32,151.31 in previously taxed contributions made by petitioner and $184,464.95 of earnings.[4] The earnings represented interest, computed based on an annually compounded rate of approximately

---

[3] For a discussion of the Retirement System and the Pension System, see generally Hylton v. Commissioner, T.C. Memo. 1995-27; Hoppe v. Commissioner, T.C. Memo. 1994-635; Hamilton v. Commissioner, T.C. Memo. 1994-633; Maryland State Teachers Association v. Hughes, 594 F. Supp. 1353, 1357-1358 (D. Md. 1984).

[4] So stipulated.

15.9 percent, and constitute the taxable portion of the Transfer Refund.

Petitioner did not roll over the Transfer Refund into either an individual retirement account or an individual retirement annuity.

When petitioner transferred from the Retirement System to the Pension System, he had attained the age of 66. If petitioner had not transferred to the Pension System but had remained a member of the Retirement System, he would have been entitled to retire and receive a normal service retirement benefit, including a regular monthly annuity. He would not have been entitled to receive a Transfer Refund because a Transfer Refund is payable only as a consequence of transferring from the Retirement System to the Pension System.

Also, as a consequence of transferring from the Retirement System to the Pension System, petitioner became, and presently is, a member of the Pension System. As a member of the Pension System, petitioner is entitled to receive a retirement benefit based upon his salary and his creditable years of service, specifically including those years of creditable service recognized under the Retirement System.[5] However, because petitioner received the Transfer Refund on account of

---

[5] Petitioner became a member of the Retirement System in 1966 and therefore had been a member of the Retirement System for some 24 years at the time of his election to transfer to the Pension System.

transferring from the Retirement System to the Pension System, petitioner's monthly annuity is less than the monthly annuity that he would have received if he had not transferred to the Pension System but had retired under the Retirement System.[6]

Petitioner received a Form W-2P from the Maryland State Retirement Agency for 1990. The Form W-2P reported the distribution of the Transfer Refund in the amount of $216,616.26. The form also reported that the taxable portion of the Transfer Refund was $186,758.54.[7]

On their income tax return for 1990, petitioners reported as income the taxable portion of the Transfer Refund, as set forth on the Form W-2P, and elected 5-year forward averaging under section 402(e)(1). In this regard, petitioners attached Form 4972 (Tax on Lump-Sum Distributions) to their income tax return and reported on said form ordinary income in the amount of $186,759; i.e., the taxable portion of the Transfer Refund as set forth on the Form W-2P. Petitioners then computed the tax on

---

[6] Petitioner estimated that his monthly annuity under the Pension System is approximately one-half of what it would have been if he had retired under the Retirement System. However, as previously indicated, petitioner would not have received the Transfer Refund if he had retired under the Retirement System. The inducement to accept a less generous monthly annuity under the Pension System was the Transfer Refund.

[7] The discrepancy between the taxable portion of the Transfer Refund as reported on the Form W-2P, i.e., $186,758.54, and the taxable portion of the Transfer Refund as stipulated by the parties, i.e., $184,464.95, is unexplained in the record. We will give effect to the parties' stipulation.

said amount and included such tax as part of their total income tax liability on page 2 of their Form 1040.

In the notice of deficiency, respondent determined that petitioners did not qualify for 5-year forward averaging. Accordingly, respondent treated the Transfer Refund, in the amount of $186,758.54, as subject to the regular income tax. Respondent contends that the Transfer Refund does not qualify for forward averaging because it does not constitute a "lump sum distribution" within the meaning of section 402(e)(4)(A).

### OPINION

As a general rule, a distribution from a qualified plan, such as the Retirement System, is taxed to the recipient in the year distributed under the rules relating to annuities. Sec. 402(a)(1); see sec. 72. However, section 402(e)(1) provides for a preferential forward averaging method of computing the tax on certain such distributions. The parties agree that petitioners are entitled to this preferential method of computing the tax on the Transfer Refund if the Transfer Refund constitutes a "lump sum distribution" within the meaning of section 402(e)(1)(A).[8]

---

[8] The Tax Reform Act of 1986 replaced the 10-year forward averaging method with a 5-year forward averaging method for lump sum amounts distributed after Dec. 31, 1986, in taxable years ending after such date. Tax Reform Act of 1986, Pub. L. 99-514, sec. 1122(a)(2), (h)(1), 100 Stat. 2085, 2466, 2470. However, the Tax Reform Act of 1986, secs. 1122(h)(5) and 1124, provide transitional rules under which lump sum distributions made after Dec. 31, 1986, will nevertheless continue to qualify, under certain limited circumstances, for the more generous 10-year
(continued...)

A lump sum distribution, for purposes of section 402, is defined in section 402(e)(4)(A) as follows:

> (A) Lump Sum Distribution.--For purposes of this section * * * , the term "lump sum distribution" means the distribution or payment within one taxable year of the recipient of the <u>balance to the credit</u> of an employee which becomes payable to the recipient--
> (i) on account of the employee's death,
> (ii) after the employee attains age $59^1/_2$,
> (iii) on account of the employee's separation from the service, or
> (iv) after the employee has become disabled * * *
> from a trust which forms a part of a plan described in section 401(a) and which is exempt from tax under section 501 * * *. For purposes of this subsection, the balance to the credit of the employee does not include the accumulated deductible employee contributions under the plan (within the meaning of section 72(o)(5)). [Emphasis added.]

There is no dispute that the distribution in issue was received by petitioner after he attained the age of $59^1/_2$, nor is there any dispute that the Retirement System is a plan described in section 401(a) and that the trust forming a part thereof is exempt from tax under section 501. Moreover, there is no dispute that the Transfer Refund distribution was made within a single taxable year. Therefore, the only issue in dispute is whether petitioner received the "balance to the credit" when he received the Transfer Refund.

---

[8](...continued)
forward averaging method, <u>id.</u>, 100 Stat. 2085, 2471, 2475. Because of his age, petitioner falls within the scope of the transitional rules, provided, of course, that the Transfer Refund qualifies as a lump sum distribution. See pages 2-3, <u>supra</u>, describing respondent's concession in this regard.

In support of her determination that petitioner did not receive the "balance to the credit" when he transferred from the Retirement System to the Pension System, respondent relies on the fact that petitioner's years of creditable service under the Retirement System carried over to the Pension System, see Md. Ann. Code, art. 73B, sec. 115(4) (1988), and that those years of service increased the monthly annuity benefit to which petitioner is entitled.

By contrast, petitioners contend that petitioner received the entire account balance from the Retirement System when he received the Transfer Refund.[9]  Therefore, petitioners conclude that the "balance to the credit" requirement of section 402(e)(4)(A) is satisfied.

We begin our analysis with section 402(e)(4)(C).  That section provides, in relevant part, as follows:

> (C) Aggregation of Certain Trusts and Plans.--For purposes of determining the balance to the credit of an employee under subparagraph (A)--
>
> (i) all trusts which are part of a plan shall be treated as a single trust, all pension plans maintained by the employer shall be treated as a single plan * * *  [Emphasis added.]

---

[9] Respondent appears to concede implicitly that the Transfer Refund included all of petitioner's contributions and the earnings thereon.  Cf. Wheeler v. Commissioner, T.C. Memo. 1993-561 (a member of the Retirement System did not receive the "balance to the credit" upon receiving a Transfer Refund; a portion of the member's contributions was transferred from the Retirement System to the Pension System).

During the years in issue, the State of Maryland maintained both the Retirement System, in which petitioner participated, and the Pension System, to which petitioner transferred effective as of November 1, 1990. Accordingly, in order to decide whether petitioner received the "balance to the credit", we must treat the Retirement System and the Pension System as a single pension plan. Sec. 402(e)(4)(C).

Under Maryland law, petitioner's annuity under the Pension System is calculated by taking into account petitioner's "average final compensation" and petitioner's years of "creditable service". Md. Ann. Code, art. 73B, sec. 117(2) (1988). Because section 402(e)(4)(C) requires that we treat the Retirement System and the Pension System as a single pension plan, we conclude that, by transferring from the Retirement System to the Pension System, petitioner did not forfeit his right to a future monthly annuity, but simply elected to receive an initial single payment to be followed by a reduced monthly annuity. Effectively, petitioner's transfer allowed him to receive the "balance to the credit" in two parts, an initial single payment to be followed by a reduced monthly annuity, based on all of his years of creditable service and on his salary during those years. See Green v. Commissioner, T.C. Memo. 1994-340.

The testimony of petitioner at trial reflects the foregoing. Thus:

Q:  Now, Mr. Pumphrey, you did ultimately retire, and I believe your testimony has been that you retired from the Pension System.  Is that correct?

A:  Well, it has to be correct, yes, sir, because I had no other choice.

Q:  And you are currently receiving an annuity from that Pension System?

A:  Yes, Sir.

Q:  Do you understand based on what that annuity is calculated?

A:  Yes, sir, my years of service and the tie-ins, the salary.

Q:  And do those years of service include the years of service that you earned under the Retirement System?

A:  Yes, sir, absolutely.

Q:  So that, when you received your pension annuity, pursuant to the plan provisions, your annuity is calculated on all the years of service under both the retirement system and the pension system, correct?

A:  Right, absolutely.  * * *

Later during the trial, in a colloquy with the Court, petitioner testified as follows:

The Court:  * * *  Now, the pension that you actually received and presumably are continuing to receive to this day was based on your entire employment tenure as the Clerk of Court of Howard County, I mean, going all the way back to 1966 [and] through your retirement?

The Witness:  I certainly assume so.  * * *

Petitioners also argue that their case "is different than all of the reported cases because it deals with an elected official that was separated from employment because of the loss

of an election and not as a result of any voluntary separation."
The distinction that petitioners draw, however, represents a
distinction without a difference because the fact that
petitioners rely on so heavily is simply not relevant to the
controlling law, i.e., the aggregation provisions of section
402(e)(4)(C).

In view of the foregoing, we hold that the Transfer Refund
did not constitute a lump-sum distribution within the meaning of
section 402(e)(4)(A) because petitioner did not receive the
"balance to the credit" when he transferred from the Retirement
System to the Pension System.  Accordingly, the Transfer Refund
received by petitioner does not qualify for forward averaging
under section 402(e)(1).  See <u>Hamilton v. Commissioner</u>, T.C.
Memo. 1994-633 (addressing whether a taxpayer had received the
"balance to the credit" in the context of whether the taxpayer
was entitled to compute tax on a transfer refund using the 10-
year forward averaging method set forth in section 402(e)(1));
<u>Hoppe v. Commissioner</u>, T.C. Memo. 1994-635 (same); see also
<u>Dorsey v. Commissioner</u>, T.C. Memo. 1995-97 (addressing whether a
taxpayer had received the "balance to the credit" in the context
of whether a Transfer Refund distribution qualified for tax-free
rollover treatment under section 402(a)(5); <u>Brown v.
Commissioner</u>, T.C. Memo. 1995-93 (same); cf. <u>supra</u> with T.C.
Memo. 1993-561.

In closing, we note that in a case decided earlier this year, the United States District Court for the District of Maryland reached the same conclusion in respect of the lump sum distribution issue that this Court has reached. Sites v. United States, 75 AFTR 2d 95-2504, 95-1 USTC par. 50,280 (D. Md. 1995). The final paragraph of the District Court's analysis deserves to be quoted as follows:

> The Court believes that the statutory analysis and reasoning of Hoppe [v. Commissioner, T.C. Memo. 1994-635] is sound. Because the Retirement System and Pension System were both maintained by Taxpayer's employer, the State of Maryland, they are to be aggregated for purposes of determining the "balance to the credit" of an employee under section 402(e)(4)(A). Whereas Taxpayer received a refund of his contributions and the accumulated interest, his service credits were transferred to and remained within the Pension System. By choosing to transfer to the Pension System, * * * [Taxpayer] opted * * * to receive a refund of his contributions and accumulated interest along with reduced annuity payments in the future. Thus, in effect, Taxpayer elected to receive the "balance to the credit" of his account in two-parts: the refund payment and the future annuity payments. Consequently, he did not receive the "balance to the credit" of his account on * * * [the Transfer Refund date]. Id. [75 AFTR 2d 95-2504, at 95-2507, 95-1 USTC par. 50,280, at 88,031].

In order to give effect to our disposition of the disputed issue, the parties' concessions, and the parties' stipulation referenced in supra notes 4 and 7,[10]

---

[10] It would appear that such stipulation would also affect the amount of the excise tax under sec. 4980A. We leave this matter to the parties as part of the Rule 155 computation.

- 14 -

Decision will be entered pursuant to Rule 155.